*642 OPINION OF THE COURT
Dan Lamont, J.
The defendant was convicted by jury verdict on August 25, 1995 of the crimes of robbery in the first degree, burglary in the first degree, burglary in the second degree, grand larceny in the third degree and petit larceny and was sentenced on October 6, 1995 as a second felony offender to consecutive indeterminate sentences of imprisonment with an aggregate term of 15 to 30 years. The Appellate Division, Third Department, by memorandum and order dated August 28, 1997, affirmed the defendant’s convictions of the crimes of robbery in the first degree, burglary in the first degree and petit larceny; and withheld decision on the remaining convictions pending the outcome of a remittal to this court to conduct a posttrial Frye hearing concerning the reliability and admissibility of Fourier Transform Infrared Spectrophotometer (hereinafter FTIR) analysis evidence and report back to the Appellate Division within 90 days.
REMEDY SOUGHT BY DEFENDANT
The defendant seeks the exclusion of FTIR analysis evidence — which evidence established that cement dust samples taken from the victims’ safe, from various locations at the crime scene including bungalows 174 and 180, and from tools recovered from the defendant’s van were all consistent with safe-lining cement which could have come from the Tybergs’ (victims) safe — upon the ground that FTIR analysis has never been determined by the courts to be generally accepted as reliable within the scientific community.
BURDEN OF PROOF
Expert testimony based on scientific principles or procedures is admissible in evidence after a scientific principle or procedure has been proved by a preponderance of the evidence to be generally accepted as reliable by the relevant scientific community.
CREDIBILITY FINDINGS
A posttrial Frye hearing was conducted before me on October 15, 1997. Dr. John A. Reffner testified for the People. His demeanor generally appeared frank and candid, and his testimony had the force and flavor of credibility. The People introduced into evidence Dr. John A. Refiner’s resume and cur *643 riculum vitae; a published article concerning "Infrared Microscopy and it’s Forensic Applications”; a published article coauthored by Dr. John A. Refiner entitled "A new approach to forensic analysis with infrared microscopy: internal reflection spectroscopy”; and graphs comparing the infrared spectrum of the safe cement sample with graphs of known cements including Portland Cement, building concrete, masonry cement and many known samples of safe insulation cement. Such exhibits are found reliable and worthy of consideration by the court.
On October 2, 1997, the court signed an order pursuant to County Law § 722-c authorizing defendant’s counsel to consult with an expert witness. The court at the hearing on October 15, 1997 granted the defendant until November 7, 1997 to inform the court of his intention to call an expert witness. The defendant did not call any witnesses in his behalf at the Frye hearing, and the defendant’s attorney-of-record has written the court that he does not intend to call any expert witness. Although the defendant has written the court disagreeing with his counsel’s decision and determination "that he can’t find an expert to testify on my behalf,” the court has denied the defendant’s request for new assigned legal counsel and for any further adjournment.
FINDINGS OF FACT
Dr. John A. Refiner holds a Bachelor of Science degree from the University of Akron, a Master of Science degree from the Illinois Institute of Technology, and a Doctorate degree from the University of Connecticut. He has a wealth of experience in Materials Science and Spectroscopy, Forensic Science and Microscopy. He has held several adjunct professorships over the years including his present position on the graduate faculty at the City University of New York. He is a member of various professional societies, has received many honors and distinctions, and has written or contributed to numerous articles involving Forensic Science, Microscopy, Materials Science, and Spectroscopy. Dr. Refiner currently works for Spectra-Tech, Inc., in Stamford, Connecticut, which manufactures and sells accessories for the FTIR. This court finds that Dr. Refiner is an expert in the fields of Materials Science and Spectroscopy and Forensic Science.
The Fourier Transform Infrared Spectrophotometer was developed from the base technology of an Infrared Spectrometer (IR) which was first discovered at the turn of the century. *644 Infrared radiation refers to the wavelengths of light that are just beyond the color red in the visible spectrum of light. Infrared radiation is absorbed by various materials in different ways. This variance in absorption is measurable by sensors contained within an IR and an FTIR as infrared radiation is passed through a sample of material. The traditional IR was little more than a prism disbursing light.
The FTIR expanded upon the IR technology with a two-way mirror device which splits the single beam of infrared light into two beams — passing one beam through the sample of material and then putting the two beams back together. The reunited beam of light now has different characteristics than it originally did based upon the absorption of various wavelengths of light by the unknown sample of material. A complex mathematical equation (named a Fourier Transform) is then applied to the wavelengths in order to separate out the intensity of each independent wavelength. The computer within the FTIR then produces a graphical representation of those wavelengths which can be compared visually and with computer aids against graphs produced by known substances.
IR machines were first used in the late 1930’s and early 1940’s to look at different kinds of synthetic rubber during World War II. After World War II, IR machines became commercially available and were improved to the current FTIR device. The witness first saw a FTIR device in 1965. The FTIR became commercially available in the mid-1970’s and has been used by the witness routinely from 1983 to today. The major improvement on the FTIR over this time period has been the speed of calculating the Fourier Transform (several hours in 1965; a minute in the mid-1970’s; milliseconds today) — such improvements in calculations being entirely due to advances in computer technology. Large resource libraries on CD-ROMS containing the graphs produced by thousands of known substances are commercially available today.
Dr. Refiner testified that the FTIR is the primary method for molecular analysis in many different areas including textiles, pharmaceuticals, forensics of trace evidence, plastics and patentability. The witness testified as to his considerable exposure to other scientists within the general field of Materials Science and Spectroscopy, as well as to scientists within the Forensic Sciences field, through teaching, professional writing, participation in professional societies and contributions to well-known authoritative texts. Dr. Refiner testified that through these associations and his past experiences, he has learned *645 that the FTIR is generally accepted, as reliable by both the scientific community at large and the forensic scientific community. Furthermore, Dr. Refiner is not aware of any controversy within the relevant scientific community regarding the use or reliability of the FTIR.
The defendant cross-examined Dr. Refiner regarding his economic benefit from general acceptance of the FTIR, his prior testimony in criminal proceedings, his consultation status with law enforcement personnel, his familiarity with other devices used for molecular analysis in the cement industry, and potential testing errors that can occur during FTIR analysis. This court finds Dr. Refiner very credible and finds that any potential errors which could occur during FTIR analysis are irrelevant in this Frye hearing in that any potential errors which could be caused by inaccurate testing procedures affect the weight and not the admissibility of evidence derived from the FTIR analysis.
CONCLUSIONS OF LAW
A Frye hearing is held to determine whether evidence derived from a new or novel scientific test or procedure should be admitted into evidence in court proceedings. The test pursuant to Frye v United States (293 F 1013 [1923]) is whether the test or procedure, when properly performed, generates results accepted as reliable within the scientific community generally (People v Wesley, 83 NY2d 417 [1994]).
"In Frye (supra, at 1014) the court stated:
" 'Just when a scientific principle or discovery crosses the line between the experimental and demonstrable stages is difficult to define. Somewhere in this twilight zone the evidential force of the principle must be recognized, and while courts will go a long way in admitting expert testimony deduced from a well-recognized scientific principle or discovery, the thing from which the deduction is made must be sufficiently established to have gained general acceptance in the particular field in which it belongs’ ” (People v Wesley, supra, at 422).
Furthermore, the particular procedure need not be " 'unanimously indorsed’ ” by the scientific community but must be " 'generally acceptable as reliable’ ” (People v Wesley, supra, at 423, citing People v Middleton, 54 NY2d 42, 49 [1981]).
Based upon the evidence adduced at the posttrial Frye hearing, which included the uncontroverted testimony of an eminently qualified expert witness in the fields of Materials Science and Spectroscopy and Forensic Science, this court holds *646 and determines that the FTIR device and the analysis generated from the FTIR device are accepted as reliable within the scientific community generally and also within the forensic scientific community. The principles upon which the FTIR is based came out of the twilight zone in the early 1900’s, and the FTIR was developed sufficiently by the mid-1970’s to be used commercially. The People’s witness in the Frye hearing began teaching courses to law enforcement personnel on the use of the FTIR for forensic analysis as early as 1988 and has taught classes on the FTIR to academics as early as 1977.
CONCLUSION
This court holds and determines that the Fourier Transform Infrared Spectrophotometer analysis is a scientific procedure based upon scientific principles which are generally accepted as reliable within the relevant scientific community. Accordingly, this court determines that the FTIR analysis evidence concluding that the cement dust samples taken from various locations at the crime scene including bungalows 174 and 180, from the victims’ safe, and from tools recovered from the defendant’s van were all consistent with safe-lining cement which could have come from the Tybergs’ (victims) safe was properly admitted into evidence during the defendant’s trial.